UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DOUGLAS KERR                            *
       Plaintiff                        *
                     *
     v.                               *            CIVIL NO. L-10-3294
                     *
THE JOHNS HOPKINS UNIVERSITY            *
                     *
                 *******

MEMORANDUM

      This is a breach of contract case.  From 1996 to 2010, the Johns Hopkins University

("JHU" or the "University") employed Dr. Douglas Kerr as a research scientist and physician.

Dr. Kerr managed a laboratory that was studying the mechanisms of paralysis.  In 2007, JHU

began investigating whether Dr. Kerr had committed "research misconduct" by altering some of

his graduate students' experimental data.

      JHU has a detailed protocol for adjudicating allegations of research misconduct.  The

protocol is set forth in the University's "Procedures for Dealing with Issues of Research

Misconduct" (the "Procedures").  This document defines research misconduct and outlines the

steps to be taken during the inquiry. The Procedures provide , inter alia, that the employee is

presumed innocent, that the allegations will be investigated and assessed by committees of the

employee's peers, that the employee may be represented by counsel and present evidence, that

findings of misconduct must be supported by a preponderance of the evidence, and that the

employee may appeal an unfavorable decision to the Provost and Dean.

      In February 2009, after interviewing witnesses and reviewing documentary evidence, the

"Investigation Committee" concluded that two of the allegations against Dr. Kerr were

sufficiently serious to be referred to the "Standing Committee on Discipline" (the "SCD").  After

receiving additional evidence and comment from Dr. Kerr, the SCD ordered the Investigation

Committee to re-convene and consider Dr. Kerr's submissions.  Before the Investigation Committee could complete its analysis, however, Dr. Kerr resigned from JHU.

Shortly thereafter, the Investigation Committee issued a second report that accepted some of  Dr. Kerr's explanation and retracted certain findings of misconduct.  Nevertheless, the committee  sustained its overall finding that Dr. Kerr had committed two instances of research misconduct.  The Investigation Committee then referred the matter to the SCD a second time.  After considering Dr. Kerr's rebuttal, the SCD sustained the finding and recommended disciplinary action, including termination of any remaining appointments and notification of Dr. Kerr's current employer.  Dr. Kerr took appeals to the Dean and the Provost, but they separately affirmed the SCD's conclusions and recommendations.

In November 2010, Dr. Kerr filed the instant suit, which centers on his claim that JHU breached his contract of employment by failing to adhere to the Procedures.  At oral argument, Dr. Kerr's counsel acknowledged that the University followed all of the procedural steps mandated by the contract.  Counsel urged, however, that JHU nevertheless breached the contract by reaching a demonstrably wrong conclusion.  Dr. Kerr's Amended Complaint also advances several tort claims, each of which depends on the viability of the underlying breach of contract count.  Although all of the claims sound in state law, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).

Now pending is JHU's Motion to Dismiss.  Docket No. 22.  Dr. Kerr has opposed the Motion on on the merits.  In addition, he contends that the University's motion raises factual issues that must be probed through discovery and tested later in the context of a motion for summary judgment.  Docket No. 30.  The Court heard argument at a hearing on August 3, 2011.

For the reasons stated below, the Court will GRANT JHU's Motion to Dismiss, DENY Dr.

Kerr's Motion for Discovery, and DIRECT the Clerk to CLOSE the case.

I.     **Background**

        Unlike employment cases that rest on the myriad anti-discrimination statutes or the Due

Process Clause, this case centers on a private academic institution's interpretation and

application of its internal procedures.  Because of this, the Court must give effect to two related

principles.  First, as a private employer, the University has broad discretion to hire, fire, and

discipline its employees subject to the terms of the employment contract.  See Suburban Hosp.,

Inc. v. Dwiggins, 324 Md. 294, 310 (1991) (declining to infer a requirement of good faith and

fair dealing in employment contracts); MacGill v. Blue Cross of Maryland, Inc., 77 Md. App.

613, 620 (Md. Ct. Spec. App. 1989) (noting that courts do not "act as super personnel officers,

overseeing and second-guessing the company's decisions").  Second, both the Supreme Court

and the Fourth Circuit Court of Appeals have written that the judiciary must be particularly

deferential to the academic decisions of educational institutions.  University of Pa. v. E.E.O.C.,

493 U.S. 182, 199 (1990) (cautioning against "review[ing] the substance of genuinely academic

decisions"); Huang v. Bd. of Governors of the Univ. of N.C., 902 F.2d 1134, 1142 (4th Cir.

1990) ("When judges are asked to review the substance of a genuinely academic decision . . .

they should show great respect for the faculty's professional judgment.").

        In its Motion to Dismiss, JHU contends that Dr. Kerr's suit, and the relief he seeks,

violates these principles of deference.  The Court agrees.  While Dr. Kerr concedes that he

received full "procedural due process," he argues that the decision reached by the University on

the merits—that he committed research misconduct—is against the clear weight of the evidence.

From this contention he reasons that the University, including its investigative committees, could

not have given effect to the guarantees stipulated in the Procedures that, <u>inter alia</u>, an accused is presumed innocent and that a factual finding of misconduct must be based on the preponderance of the evidence.  His suit, therefore, seeks to relitigate the entire controversy in hopes of demonstrating that a mistake was made.  Dr. Kerr asks a lay jury to substitute its judgment for that of the University.  This endeavor would invade the prerogatives that the University enjoys as a private, academic employer.

As to Dr. Kerr's Motion for Discovery, JHU makes two telling points.  First, discovery would necessarily center (primarily through depositions) on the subjective thought processes of the numerous committee members who investigated and evaluated the evidence against Dr. Kerr. This burdensome and expensive discovery would itself violate the principles of deference by interjecting the Court and its cumbersome procedures into a private disciplinary matter.  Second, Dr. Kerr and his counsel (who represented Dr. Kerr during most of the University investigation) have a virtually complete copy of the extensive record generated by his case.  These materials outline the charges of research misconduct, analyze the evidence in detail, and state the reasoning of the committees with respect to each of the allegations.  This record can be relied upon at the motion-to-dismiss stage because it is integral to Dr. Kerr's claim.  <u>See</u> <u>CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 566 F.3d 150, 154 (4th Cir. 2009) (In considering a motion to dismiss, the court may rely on any document that is "integral to and explicitly relied on in the complaint" without converting the motion to a summary judgment motion, irrespective of whether the document is attached to the complaint, so long as the "plaintiffs do not challenge its authenticity.").

If the record was woefully inadequate, discovery might be in order.  The extensive record, however, establishes that the University thoroughly investigated the charges against Dr.

Kerr, fully elaborated its conclusions, and carefully followed the procedural steps required. Based on such a record, no grounds exist for a Court to interject itself into a university disciplinary matter.

With this background in mind, the Court will turn to the facts alleged in the Complaint.

### A.      Allegations in the Complaint

Dr. Kerr's Amended Complaint presents a relatively bare-bones version of the facts.  His allegations state the following:

JHU employed Dr. Kerr from 1996 to 2010.  During this time, Dr. Kerr supervised a laboratory in which experiments concerning the mechanisms of paralysis were conducted on rodents.  In November 2006, "an issue arose" as to whether certain laboratory reports kept between 2004 and 2006 had been altered.  JHU also developed concerns about whether Dr. Kerr had modified computer programs to conceal the altered data and had provided false information on a provisional patent application.

An internal investigating committee determined that Dr. Kerr had altered the records.  Dr. Kerr acknowledged that the data had been altered and that he had oversight responsibility for the laboratory, but he contended that his investigation revealed that a laboratory technician made the changes.  Dr. Kerr presented this evidence to the investigating committee, which failed to give it the proper weight, and concluded that he had committed research misconduct.  Dr. Kerr further alleges that this erroneous finding was wrongfully sustained by the SCD, the Dean, and the Provost.

### B.      Integral Documents in the Record

Dr. Kerr's Amended Complaint references a number of documents that are not attached to the pleading but that are nevertheless integral to his claims.  He quotes the Procedures at

length and repeatedly refers to the "Report of Investigation, the "Standing Committee on

Discipline Report," the "Advisory Board Report," and his appeals to the Dean and Provost.

Because Dr. Kerr alleges that JHU failed to properly consider his evidence and rebuttals, those

documents are integral to his case.

While briefing various motions, the parties submitted most of the disciplinary record.  At the

hearing, the Court invited the parties to supply any other documents that they considered

pertinent.  Following the hearing, Dr. Kerr and JHU submitted several additional documents.

Thus, both the Court and counsel have what amounts to the entire disciplinary record.

## II.    Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff

must plead plausible, not merely conceivable, facts in support of his claim.  See Bell Atl. Corp.

v. Twombly, 127 S. Ct. 1955, 1974 (2007).  The complaint must state "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at

1965.  The court must, however, "assume the veracity [of well-pleaded factual allegations] and

then determine whether they plausibly give rise to an entitlement of relief."  Ashcroft v. Iqbal,

129 S. Ct. 1937, 1950 (2009).

## III.   Analysis

Dr. Kerr's case centers on his allegation that JHU breached his employment contract by

failing to adhere to the Procedures.  His tort claims are derivative of the breach of contract claim

because they rest on the assumption that JHU wrongfully concluded that he had committed

research misconduct.  Thus, the bulk of the Court's analysis will focus on the breach of contract

claim.

A.      **Breach of Contract**

As a general rule, employment in Maryland is at-will, meaning that an employee can be terminated or disciplined "for any reason, even a reason that is arbitrary, capricious, or fundamentally unfair." Towson University v. Conte, 384 Md. 68, 82 (2004).  Dr. Kerr's employment was not completely at-will because he received annual appointment letters.  These letters reference JHU's faculty policies, including the Procedures, and JHU acknowledges that it is fair to incorporate those documents into Dr. Kerr's contract.  See generally Scott v. Merck & Co., Inc., No. L-09-3271, 2010 WL 4941994, slip op at *3 (Nov. 30, 2010) (noting that an employment contract "may be so modified by a personnel policy statement as to . . . limit the employer's discretion to terminate an employee").  Nevertheless, JHU has raised the important threshold question as to the enforceability of the Procedures.

The Court had occasion to thoroughly analyze this issue in the Scott v. Merck opinion cited above.  Rather than restate the law at length, the Court simply notes that for personnel policies to be actionable, "the benefits promised must be definite and specific, capable of objective application in discrete cases." Id. at *4.  Thus, while aspirational statements of policy are not enforceable, employers must adhere to specific promises that offer a defined benefit. Compare Ayers v. ARA Health Services, 918 F. Supp. 143, 148 (D. Md. 1995) (statement of company policy to "behave in an ethical manner" too general to form basis for breach of contract claim) and MacGill, 77 Md. App.at 618-19 (commitment to fill vacancies with most qualified applicant consistent with law, fairness, and affirmative action did not promise any specific and definite benefit) with Dwiggins, 324 Md. 294 (promise of specific grievance procedure before termination is enforceable); Staggs v. Blue Cross of Maryland, Inc., 61 Md. App. 381, 392 (Md. Ct. Spec. App. 1985) (promise of two counseling sessions prior to termination is enforceable).

7

The statements that an employer makes in its handbooks fall along a continuum of enforceability.  Most are aspirational and unenforceable.  Some, however, are sufficiently definite and concrete to become part of the employment contract.  See Scott, 2010 WL 4941994 (holding that promise that employer would not terminate employee in retaliation for raising concerns about business practices in good faith was enforceable).  With this background in mind, the Court will address the contract sub judice.

In his Amended Complaint, Dr. Kerr alleges that JHU breached the following six provisions of the Procedures:

- "Research misconduct does not include honest error or honest differences of opinion."

- "Each of the following must be met to support a finding of research misconduct: a) there has been a significant departure from the accepted practices of the scientific community; b) the misconduct was committed intentionally, knowingly, or recklessly; and c) the allegation has been proven by a preponderance of the evidence."

- "The following procedures recognize that it may be very difficult to determine whether misconduct has occurred, and that the process of inquiry or investigation must be sufficiently flexible to permit early termination of the proceedings when it becomes clear that charges are unjustified . . . ."

- "Every inquiry and subsequent investigation will be based on a presumption of innocence until proven otherwise . . . ."

- "Since a charge of misconduct, especially if unjustified, may seriously damage an individual's career, any allegation of misconduct should be handled as confidentially as possible.  As few people should be involved at any stage of the procedure."

- "The purpose of the investigation is to collect all evidence relevant to the allegation of research misconduct, from documentation, interviews, with those involved, and interviews with those knowledgeable about the subject under investigation.  This collection of evidence is to be objective, independent, unbiased, and thorough."

Am. Compl. 9–10, Docket No. 16.

Almost all of these  statements are plainly at the non-binding end of the spectrum.  These include the policies of conducting a "sufficiently flexible" investigation, handling allegations of misconduct "as confidentially as possible," and collecting evidence in an "objective, independent, unbiased, and thorough [manner]."  Dr. Kerr's list includes two guarantees that are arguably non-aspirational.  These are the the statements that the accused is presumed innocent and that findings of research misconduct must be supported by a preponderance of the evidence.  The record reflects that both of these guarantees were observed.

The committee reports explicitly recite that they were aware of and applied these standards.[1]  See, e.g., SCD Report, Docket No. 14-7, at 6 ("The SCD concluded that the investigation was thorough and careful and that institutional procedures were followed . . . .  The SCD determined that the Investigation Committee's findings with respect to Allegations 1 and 3 were justified based on the evidence available and the standard of proof required.").

This is all that the law requires.  The Court has no cause either to (i) voire dire the committee members to ascertain their understanding of the two guarantees, or (ii) independently

---

[1]      To summarize, the Investigation Committee issued a lengthy report that outlined the specific allegations against Dr. Kerr, detailed the investigative steps taken, which included interviewing Dr. Kerr and 14 other witnesses, and supported its conclusions with abundant references to facts in the record, including interview testimony and hard data.  Notably, the committee concluded that two allegations should be referred to the SCD but that three should be dismissed.  After Dr. Kerr submitted his mitigating evidence, the committee issued a second lengthy report that painstakingly presented its analysis of that material.  See Review of New Material, Docket No. 22-3.
    The SCD report is similarly thorough.  It states that the SCD reviewed the Investigation Committee's initial report, the Investigation Committee's review of Dr. Kerr's mitigating evidence, and Dr. Kerr's rebuttals.  The report also stated that it interviewed Dr. Kerr and three members of the Investigation Committee.  The SCD report specifically concluded that the Investigation Committee had followed the Procedures and that its findings were "justified based on the evidence available and standard of proof required."  Docket No. 14-7 at 5.  The Dean and Provost's appellate decisions reference the definition of research misconduct and uphold the committees' findings.

weigh the evidence.  Maryland courts have repeatedly counseled against precisely this type of

undertaking.  Cf. Sadler v. Dimensions Healthcare Corp., 378 Md. 509, 543 (2003) ("If the

gravamen of the action is the credentialing decision itself . . . and a resolution of the complaint

would require a judge or jury to determine whether, in their view, the decision was right or

wrong or fair or unfair, the action simply will not lie.").  For these reasons, Dr. Kerr's breach of

contract claim fails.

### B.   Tort Claims

Each of Dr. Kerr's tort claims is derivative of his breach of contract claim because they

rest on his contention that JHU wrongfully concluded that he had committed research

misconduct and disclosed this fact to others.  For the reasons discussed above, the Court rejects

this argument and concludes that, on the facts alleged, Dr. Kerr cannot sustain a suit in either

contract or tort.  Dr. Kerr's tort claims contain many other fatal flaws that will be addressed in

passing.

### 1.   Defamation

Dr. Kerr's claim of defamation is based on four documents that the University generated

during the adjudication of his case.  Dr. Kerr concedes that JHU enjoys a conditional privilege to

make "statements in furtherance of . . . the employee-employer relationship."  Seneschal v. AM

Broadband, LCC, Civil Action No. CCB-8-2171, 2010 WL 3522436, at *10 (D. Md. Sep. 8,

2010).  Nevertheless, he maintains that the University violated this privilege by maliciously

leaking details of the investigation to outside institutions and other third parties.  See Gen. Mot.

Corp. v. Piskor, 277 Md. 165 (1976) (holding that employee could overcome employer's

privilege by establishing that employer acted with malice).[2]  Dr. Kerr, however, advances no specific allegations that the reports circulated outside of JHU.  Further, he is not entitled to discovery because the reports are not defamatory on their face.[3]

The SCD report summarizes the investigation and states the committee's conclusions.  It also includes the fact that Dr. Kerr presented contradictory evidence.  Likewise, the Dean's Report and Provost's Report merely state their conclusions that the investigations were procedurally sound and that the proposed disciplinary actions were appropriate.  Therefore, it can hardly be said that these reports are defamatory, meaning that they would expose Dr. Kerr to "public scorn, hatred, contempt or ridicule."  Leese v. Baltimore County, 64 Md. App. 442, 473 (1985), overruled on other grounds, Harford County v. Bel Air, 348 Md. 363 (1998); see also De Leon v. Saint Joseph Hosp., Inc., 871 F.2d 1229, 1239 (4th Cir. 1989) (upholding the district court's determination that statements in a hospital credentialing committee's report were not defamatory because the report consistently noted the plaintiff's denial of its factual findings).

Finally, it is inevitable, given the number of individuals involved in the peer review, that details of the disciplinary proceedings would become the subject of rumor and speculation outside Hopkins.  Dr. Kerr has no evidence that JHU took affirmative steps to blacken his reputation, and the Court will not allow him discovery in an effort to prove what is no more than speculation.

---

[2] Malice includes "a reckless disregard of truth, the use of unnecessarily abusive language, or other circumstances which would support a conclusion that the defendant acted in an ill-tempered manner or was motivated by ill-will."  Sindorf v. Jacron Sales Co., Inc., 27 Md. App. 53, 69 (Md. Ct. Spec. App. 1975) (quoting Stevenson v. Baltimore Club, 243 A.2d 533, 536 (Md. 1968)).  In considering an abuse of privilege, the Court must consider all relevant circumstances, including "whether the communication was made in a proper manner and only to proper parties."  Id. at 69–70.
[3] The Court further notes that any claims arising from the Investigation Committee's August 2009 report are time-barred.  See Md. Code Ann., Cts. & Jud. Proc. § 5-105 (one year statute of limitations for defamation claims).

### 2.      False Light Invasion of Privacy

Dr. Kerr further claims that by allowing the reports of his investigation to circulate internally and externally, JHU exposed him to a false light invasion of privacy.[4]  Dr. Kerr's claim for false light suffers from the same deficiencies as his defamation claim.  See Crowley v. Fox Broadcasting Co., 851 F. Supp. 700 (D. Md. 1994) ("In Maryland, a claim for false light invasion of privacy may not stand unless the claim also meets the standards for defamation.").  Accordingly, JHU's Motion must be granted as to Dr. Kerr's false light claim.

### 3.      Fraud

Dr. Kerr's fraud claim also must be dismissed.  Dr. Kerr has not identified with particularity any statements made by JHU apart from the promises contained in his contract.  See P.'s Opp. at 22-23 ("Dr. Kerr believes that the failure to consider at all his Rebuttals to the misconduct charges . . . under the standards set out in the research procedures show that a fraud has been committed upon him.").  Maryland courts have repeatedly stated that the "failure to fulfill a promise is merely a breach of contract."  Sass v. Andrew, 152 Md. App. 406, 438 (Md. Ct. Spec. App. 2003) (Hollander, J.).  Thus, "fraud cannot be predicated on statements which are merely promissory in nature, or upon expressions as to what will happen in the future."  Id. (citing Levin v. Singer, 227 Md. 47, 63 (1961)).  Because Dr. Kerr's allegations would support, at most, a breach of contract, his fraud claim will be dismissed.

### 4.      Tortious Interference

---

[4] A publication unreasonably places a plaintiff in false light if: (i) the false light would be highly offensive to a reasonable person and (ii) the defendant knew or recklessly disregarded the falsity of the publicized matter and the false light in which the plaintiff would be placed.  Ostrzenski v. Seigel, 177 F.3d 245, 252 (4th Cir. 1999).  "Publicity consists of communication to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Mayer v. Safeway, Inc., 398 F. Supp. 2d 412, 429 (D. Md. 2005) (citing Restatement (Second) of Torts § 652D, cmt. A (1977)).

Kerr seeks damages for tortious interference with contractual relations and an injunction preventing JHU from notifying his current employer that he was found responsible for research misconduct.  In order to state a claim for tortious interference with business or contractual relations, a plaintiff must allege "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting."  Kaser v. Financial Protection Marketing, Inc., 831 A.2d 49 (Md. 2003) (quoting Willner v. Silverman, 71 A. 962, 964 (Md. 1909)).

Regardless of the other elements, Kerr's claim fails because the disclosure he seeks to prevent would not satisfy the "unlawful purpose" element of the tort.  In Alexander & Alexander Inc. v. B. Dixon Evander & Associates, Inc., 650 A.2d 260 (Md. 1994), the Maryland Court of Appeals explained that this element requires proof of "conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships."[5]

None of the considerations that could support a finding of malice is present in this case. As discussed supra, the disclosure would not be independently tortious because JHU is privileged to inform future employers of the circumstances surrounding Kerr's resignation.  See Carter v. Aramark Sports and Entertainment Servs., Inc., 835 A.2d 262, 280–281 (Md. Ct. Spec. App. 2003) (upholding summary judgment on both defamation and tortious interference claims because defendant's statements were protected by a conditional privilege).

IV.     **Conclusion**

---

[5] Such conduct includes "common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." Id. at 271 (internal citations and quotations ommitted).

As explained above, all of Dr. Kerr's claims require dismissal.  The only remaining question is whether he should be afforded leave to file a second amended complaint.  The Court concludes that he should not.  Dr. Kerr has stated that, in essence, he seeks a second review of the evidence.   He has already once amended his complaint in attempt to present this theory in a legally actionable way.  Because the law forecloses this theory, however, no further litigation will be permitted.[6]

For these reasons, the Court will, by separate Order of even date, GRANT JHU's Motion, DENY Dr. Kerr's Motion, and DIRECT the Clerk to close the case.

Dated the  12th   day of September, 2011.                    _____/s/_____
                                                              Benson Everett Legg
                                                              United States District Judge

---

[6] Because of the deference that must be accorded to the University's disciplinary decision making, the Court has not reviewed the merits of the academic misconduct findings against Dr. Kerr.  This decision is not a validation of those findings.  Rather, the Court has concluded, based on clear Maryland law, that the University's decisions are unreviewable by this Court.